```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF VIRGINIA

                           Alexandria Division

UNITED STATES OF AMERICA     )
                             )
          v.                 )
                             )      01:05cr150(JCC)
RAHIM BARIEK,                )
                             )
          Defendant.         )
```

## **M E M O R A N D U M   O P I N I O N**
(Statement of Reasons)

This matter is before the Court for sentencing.

### I.   BACKGROUND

On May 20, 2005, the defendant, Rahim Bariek, pled guilty to operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. The defendant's plea was based on his operation of a "hawala" system, in which he transmitted approximately $4.9 million from various individuals in the United States to persons living in Afghanistan, Pakistan, and Iran. The defendant did so without obtaining a license from the Virginia State Corporation Commission, as required by Va. Code § 6.1-371. For the reasons stated herein, the Court sentences the defendant to eighteen (18) months imprisonment, and two (2) years supervised release, during which time the defendant is not to operate a hawala business.

## II. STANDARD OF REVIEW

In *United States v. Booker*, the Supreme Court held 18 U.S.C. § 3553(b)(1) to be unconstitutional insofar as it made the United States Sentencing Guidelines mandatory. *United States v. Booker*, ___ U.S. ____, 125 S.Ct. 738, 755-56 (2005). The Court thus severed the unconstitutional portion of § 3553, rendering the Sentencing Guidelines advisory. *Id.*, 125 S.Ct. at 756-57. In *United States v. Hughes*, the Fourth Circuit stated:

> Consistent with the remedial scheme set forth in *Booker*, a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then the court shall consider that range as well as other relevant factors set forth in § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

## III. ANALYSIS

### A. Guideline Range

The Sentencing Guidelines provide that the base offense level for a violation of 18 U.S.C. § 1960 is "6 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the funds . . . ." U.S.S.G. § 2S1.3(a)(2). The government argues that the "value of the funds" includes the entire amount of money transmitted by the defendant's hawala, or $4.9 million. Based on this amount, the government argues that the defendant's base

offense level should be enhanced by 18 levels, U.S.S.G. § 2B1.1(b)(1)(J), for a total base offense level of 24.

The Application Notes to the Guideline in question define the term "value of the funds" as "the amount of funds involved in the structuring or reporting conduct." U.S.S.G. § 2S1.3 cmt. n.1.[1]  The defendant argues that the offense to which he pled guilty did not involve "structuring or reporting conduct," and that as such, the $4.9 million he transmitted overseas during the course of his business should not be included within the phrase "the value of the funds."

Thus, the issue is essentially whether the operation of a money transmitting business without obtaining a license required under state law constitutes "structuring or reporting conduct."  The statutes to which U.S.S.G. § 2S1.3 applies seem to draw a distinction between the initial registration and/or licensing of a business itself, which is governed by 18 U.S.C. § 1960, and the reporting of transactions[2] in which the business

---

[1] Commentary contained within the Guidelines Manual that interprets or explains a sentencing guideline is authoritative, unless it violates the Constitution or a federal statute, or is inconsistent with or a plainly erroneous reading of the guideline in question. *Stinson v. United States*, 508 U.S. 36, 38 (1993).  Failure to follow the commentary "could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal."  U.S.S.G. § 1B1.7.

[2] U.S.S.G. § 2S1.3 applies to sentencing for a variety of offenses, and most of the statutes creating those offenses explicitly refer to "reporting" or "structuring."  Each statute imposing or authorizing a "reporting" requirement does so only with respect to specific or aggregated transactions. *See* 31 U.S.C. §§ 5313(a), 5314(a), 5316(a), 5318(g)(1), 5318A(b)(1)(A), 5326, 5331(a).  Likewise, the statute creating the "structuring" offense contemplates the structuring of specific transactions to avoid the federal reporting requirements.  *See* 31 U.S.C. § 5324.

(or the individual operating the business) engages. *Compare* 31 U.S.C. § 5330 (requiring money transmitting businesses to "register" with the Secretary of the Treasury), *with, e.g.,* 31 U.S.C. § 5331 (requiring persons receiving more than $10,000 in a single transaction or related transactions to file a "report").

This seeming distinction between registration/licensing requirements and reporting requirements would, at first glance, appear to militate toward a conclusion that the operation of a business without the appropriate state license is not "structuring or reporting conduct." Under this view, the phrase would contemplate only specific transactions that evade or otherwise violate the federal transaction reporting requirements.

Nevertheless, the weight of the evidence indicates that the Sentencing Commission did not intend for "structuring or reporting conduct" to be read in this technical manner, to exclude registration/licensing offenses. In 2001, U.S.S.G. § 2S1.3 was amended to include violations of 18 U.S.C. § 1960 within its ambit. Application Note 1 existed in its present form at the time of this amendment. Because the Commission did not differentiate the funds used in § 1960 violations from this existing definition, it can be inferred that the Commission intended § 1960 violations to be included within the phrase "structuring or reporting conduct." This inference is strengthened by the commentary accompanying the 2001 amendment,

which states, in pertinent part: "Operation of money transmitting businesses without an appropriate license is proscribed by 18 U.S.C. § 1960, as are failures to comply with *certain reporting requirements issued under 31 U.S.C. § 5330*." (Emphasis added.) As shown above, 31 U.S.C. 5330 imposes a registration requirement, not a reporting requirement, as those terms are used in the relevant statutes.  It is thus evident that the Sentencing Commission considered a registration/licensing offense to be "reporting conduct," within the meaning of Application Note 1.

Finally, it would be illogical to penalize unlicensed money transmitters without regard to the amount of money they transmitted, which is the result that would occur if the Court were to adopt the defendant's interpretation.  "The proper measure of criminal responsibility generally is the harm that the defendant caused . . . ."  *United States v. McHan*, 101 F.3d 1027, 1042 (4th Cir. 1996).  As the government points out, 18 U.S.C. § 1960 was enacted and recently amended in part to prevent terrorists, money launderers, and other criminals from exploiting unregulated banking systems.  The more money that is transmitted by an unlicensed business, the more likely that some of that money will find its way into criminal hands, and hence, the greater the harm caused.  It is thus appropriate to reach a sentencing range determination based on the amount of money transmitted.

In *United States v. Abdi*, 342 F.3d 313 (4th Cir. 2003), the Fourth Circuit held that Application Note 1 required calculation of "the entire amount of the funds" involved in the structuring or reporting conduct in imposing the appropriate penalty level enhancement under U.S.S.G. § 2S1.3(a)(2).  *Abdi*, 342 F.3d at 319.  In this case, that amount is $4.9 million.  The Court will therefore find that an 18-level enhancement in the defendant's base offense level is appropriate.  U.S.S.G. §§ 2B1.1(b)(1)(J), 2S1.3(a)(2).  Accordingly, the defendant's base offense level is 24.

The Court also finds that the defendant has clearly accepted responsibility for his offense, in a timely fashion, and is therefore entitled to a 3-point offense level deduction.  U.S.S.G. § 3E1.1.  With a criminal history category of I and an adjusted offense level of 21, the sentencing range for the defendant is 37 to 46 months.

### B.   18 U.S.C. § 3553(a) Factors

Section 3553(a) requires district courts to impose a sentence "sufficient but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2): retribution, deterrence, incapacitation, and rehabilitation.  The defendant requests that the Court impose a more lenient sentence than that recommended by the Guidelines, based on four factors enumerated in 18 U.S.C. § 3553(a): 1) the nature of the offense;

2) the need to avoid unwarranted sentence disparities among similarly situated defendants; 3) the circumstances of the offense and the history and characteristics of the defendant; and 4) the need to protect the public and afford adequate deterrence. The defendant requests that the Court impose a sentence of 12 months home confinement. In contrast, the government requests the Court to impose a sentence of 37 months imprisonment, consistent with the minimum penalty within the range recommended by the guidelines.

   <u>1. Nature of the Offense</u>

   The defendant argues that 18 U.S.C. § 1960(a) establishes what is essentially a public welfare offense, and that as such, the 37 to 46 month term of imprisonment recommended by the Guidelines is unnecessarily severe. The defendant asserts that lengthy terms of imprisonment may not accompany public welfare offenses. In support, he points out that the Supreme Court has relied on the potential term of imprisonment in imputing a *mens rea* requirement to a federal statute that was silent on the subject. *See Staples v. United States*, 511 U.S. 600, 616 (1994) (holding that a statute criminalizing possession of an unregistered firearm required scienter, in part because of the "potentially harsh penalty" attached to a violation).

In the present case, the statutory language defining the conduct to which the defendant pled guilty is clear in dispensing with any *mens rea* requirement:

> [T]he term "unlicensed money transmitting business means a money transmitting business which . . . (A) is operated without an appropriate money transmitting license in a State were such operation is punishable as a misdemeanor or a felony under State law, *whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable.*

18 U.S.C. § 1960(b)(1)(A) (emphasis added). Neither *Staples* nor any other decision cited by the defendant states that Congress is prohibited from attaching a harsher penalty to an offense created without a scienter requirement. In fact, federal crimes are solely creatures of statute. *See Staples*, 511 U.S. at 604-05; *Liparota v. United States*, 471 U.S. 419, 424 (1985). Here, Congress has provided for a potential term of imprisonment of 5 years for the conduct to which the defendant pled guilty. 18 U.S.C. § 1960(a). While the defendant correctly notes that many of the states that criminalize the unlicensed operation of a money transfer business have chosen to impose lesser maximum penalties, it is Congress's prerogative to impose a harsher penalty if it chooses to do so. The sentencing range recommended by the Guidelines is consistent with this legislative intent.

### 2. Unwarranted Sentencing Disparities

Section 1960 only prohibits the operation of an unlicensed money transmitting business where such operation is

"punishable as a misdemeanor or felony under State law." 18 U.S.C. § 1960(b)(1)(A). The defendant points to the fact that if he had lived in a state that did not criminally punish the operation of an unlicensed money transmitting business, he would not be facing a federal sentence. He argues that this creates an unnecessary sentencing disparity.

In sentencing a defendant, the Court will take into account "the need to avoid unwarranted sentence disparities among defendants with similar records *who have been found guilty of similar conduct*." 18 U.S.C. § 3553(a)(6) (emphasis added). The disparity complained of by the defendant is not a sentence disparity at all; rather, it is a disparity in the fact-of-violation. Individuals located in states that do not criminalize the unlicensed operation of a money transmission business do not face any criminal liability under § 1960 whatsoever. As such, there are no "defendants with similar records who have been found guilty of similar conduct" in states that do not criminalize the conduct prohibited by § 1960. 18 U.S.C. § 3553(a)(6). No sentencing disparity exists between the defendant and individuals operating money transmitting businesses in states that do not criminally punish such conduct.

The defendant also points to the disparity in punishments between § 1960 and Virginia law. Had he been charged with the same conduct in state court, he would have faced a

misdemeanor conviction, with a potential sentence of up to one year of imprisonment. Va. Code § 6.1-375. Since *Booker*, some courts have considered such disparities between state and federal punishments in imposing sentences. *E.g.*, *United States v. Lucania*, 379 F. Supp. 2d 288, 296-97 (E.D.N.Y. 2005)

       The predominant federal interest served by § 1960 is the regulation of money transmitting businesses to ensure that they do not channel funds from the United States to terrorists, drug traffickers, or other criminals abroad. Here, the only wrongdoing to which the defendant pleaded guilty was operating a money transmitting business without having obtained the appropriate state license. The defendant complied with the federal regulatory requirements by registering his business with the Department of the Treasury. As the defendant's conduct appears to have at least partially satisfied the federal regulation interest, little purpose would be served by imposing a substantially harsher penalty than that allowed by the Commonwealth of Virginia for violation of its own business licensing requirement. A significant sentencing disparity with what the defendant would face in state court would thus be unwarranted.

       3.   <u>Circumstances of the Offense; Defendant's History</u>

       In November, 2001, the defendant testified before a Senate subcommittee regarding the hawala system. Thereafter, on

November 20, 2001, the Virginia State Corporation Commission ("SCC") issued an official notification of the state licensing requirement to the defendant.  On December 10, 2001, the defendant registered his business with the Department of the Treasury, as required by 31 U.S.C. § 5330.  The defendant also applied for a business license in Fairfax County and sought a certification as a limited liability company ("LLC") from the SCC.  On April 18, 2002, the defendant received this certification.  Thereafter, the defendant operated his business without applying for the money transmitting business license required by Va. Code § 6.1-371, until the SCC notified him of his noncompliance and he came under federal investigation in August 2003.

Before the defendant ceased operation of his business in August 2003, he conducted his business with a "don't ask, don't tell policy."  There is some evidence to indicate that a small portion of the funds transmitted by the defendant were sent to suspected drug smugglers.  The defendant made little or no inquiries regarding the origin or destination of the funds he transmitted, however, and there is no evidence to suggest that he knew of the origin or destination of these transmissions.

The government has requested a sentence of 37 months imprisonment, claiming that the defendant failed to accurately report to the Internal Revenue Service ("IRS") his income from

his money transmitting business. The government has submitted the defendant's 2001 and 2002 tax returns, which reflect gross receipts of $15,200 and $15,600, respectively. However, these amounts are consistent with 1.5% of $4.9 million in money transmission transactions conducted between 2001 and 2003, which is what the defendant claims his ultimate commission to have been.[3] There is thus no indication that the defendant underreported his income to the IRS.

The documents reviewed by the Court show that the defendant was not only forthright about the income derived from his money transmitting business, but also that he complied with all applicable registration and licensing requirements except for Va. Code § 6.1-371. While the defendant operated his unlicensed business for almost two years after receiving official notification of the state licensing requirement and transmitted money to Afghanistan at a time when it was illegal to do so, the other circumstances of the defendant's offense suggest minimal culpability. The defendant's compliance with the federal

---

[3] The Presentence Report, and interviews conducted by Immigrations and Customs Enforcement officials with the defendant, his employees, and his customers each indicate that the defendant charged his customers a 5% commission for each transaction. The defendant does not now dispute this rate, but claims that the majority of this commission went to defray the costs of business expenses, leaving him with an ultimate commission of 1.5%. The defendant has consistently maintained that the majority of these costs consisted of a commission that he was required to pay his overseas counterparts. *Compare Abdi*, 342 F.3d at 315 (stating that the operators of a hawala business retained 1% of each deposit and remitted 3% to their overseas counterparts). While the government disagrees with this contention, it has offered no evidence to refute it.

his money transmitting business. The government has submitted the defendant's 2001 and 2002 tax returns, which reflect gross receipts of $15,200 and $15,600, respectively. However, these amounts are consistent with 1.5% of $4.9 million in money transmission transactions conducted between 2001 and 2003, which is what the defendant claims his ultimate commission to have been.[3] There is thus no indication that the defendant underreported his income to the IRS.

The documents reviewed by the Court show that the defendant was not only forthright about the income derived from his money transmitting business, but also that he complied with all applicable registration and licensing requirements except for Va. Code § 6.1-371. While the defendant operated his unlicensed business for almost two years after receiving official notification of the state licensing requirement and transmitted money to Afghanistan at a time when it was illegal to do so, the other circumstances of the defendant's offense suggest minimal culpability. The defendant's compliance with the federal

---

[3] The Presentence Report, and interviews conducted by Immigrations and Customs Enforcement officials with the defendant, his employees, and his customers each indicate that the defendant charged his customers a 5% commission for each transaction. The defendant does not now dispute this rate, but claims that the majority of this commission went to defray the costs of business expenses, leaving him with an ultimate commission of 1.5%. The defendant has consistently maintained that the majority of these costs consisted of a commission that he was required to pay his overseas counterparts. *Compare Abdi*, 342 F.3d at 315 (stating that the operators of a hawala business retained 1% of each deposit and remitted 3% to their overseas counterparts). While the government disagrees with this contention, it has offered no evidence to refute it.

registration requirement, as well as with the state LLC certification and county business license requirements, indicate that he did not seek to hide the conduct of his business from the authorities.  While some of the funds he transmitted may have reached the hands of suspected drug smugglers, the increased culpability that this fact would seem to intimate is belied by the total lack of evidence that the defendant knew of the destination of the funds.  For the foregoing reasons, the Court finds that the defendant violated 18 U.S.C. § 1960 with little or no *mens rea*.

Finally, the Court notes that this is the defendant's first criminal offense.  The defendant arrived in the United States in 1989 and later sought and obtained his United States citizenship.  Since his arrival, he has maintained stable employment, has supported his family, and has become a well-respected member of the Afghan community.  Further, there is no indication that the defendant poses a risk of recidivism.  For each of these reasons, the Court finds no compelling rehabilitation need as would be served by a lengthy term of incarceration.

### 4.  Deterrence; Public Interests

A sentence that is more lenient than the range recommended by Guidelines would be "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to satisfy the public

interests in incapacitation, retribution, and deterrence.  First, a significant penalty would not provide substantial general deterrence.  Insofar as 18 U.S.C. § 1960 imposes a federal penalty for failure to obtain a state money transmission license, it operates in patchwork fashion, only prohibiting such conduct where state law prohibits the unlicensed operation of a money transmission business.  For this reason, the operator of a money transmission business could legally engage in conduct identical to the defendant's by operating in a state that did not prohibit the practice.  A significant penalty would likely do little to deter would-be money launderers, as they could simply move their operations to states where they would not face the federal penalty.

Second, as herein discussed, the defendant acted with little or no *mens rea* and poses no risk of recidivism.  An extended sentence would therefore be unnecessary to meet the public interests in specific deterrence and incapacitation.  Finally, the Court recognizes that the defendant continued to operate his hawala business without a state license after receiving official notification of the licensing requirement, and that he transmitted money to Afghanistan when it was illegal to do so.  However, each other circumstance in this case suggests that a sentence of 18 months imprisonment would adequately reflect the seriousness of the defendant's offense and satisfy

the public interest in retribution.  The defendant's § 1960 violation is based solely on his failure to obtain a state license, an offense for which he would face a misdemeanor conviction and a maximum sentence of one year of imprisonment in state court.  The defendant did not attempt to hide his business from the authorities, and he had no knowledge that some, if any, of the funds he transmitted went to illegitimate purposes.  Due to these circumstances, a sentence of 18 months is "sufficient, but not greater than necessary" to reflect the seriousness of the defendant's offense.

### IV.   CONCLUSION

For the foregoing reasons, the Court sentences the defendant, Rahim Bariek, to eighteen (18) months in prison, and two (2) years supervised release sentence, during which time he is prohibited from operating a hawala business.  An appropriate Order will issue.

September   23, 2005                    _____/s/_____
Alexandria, Virginia                              James C. Cacheris
                                         UNITED STATES DISTRICT COURT JUDGE